**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA,
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 4000
Washington, DC 20530,

                 *Plaintiff*,

    v.

DEERE & COMPANY
One Deere Place
Moline, IL 61265,

PRECISION PLANTING LLC
22307 Townline Road
Tremont, IL 61568,

and

MONSANTO COMPANY
800 North Lindbergh Blvd.
St. Louis, MO 63167,

                 *Defendants*.

## <u>COMPLAINT</u>

The United States of America, acting under the direction of the Attorney General of the

United States, brings this civil action to enjoin the proposed acquisition by Defendant Deere &

Company ("Deere") of Defendant Precision Planting LLC ("Precision Planting"), a subsidiary of

Defendant Monsanto Company ("Monsanto").  The United States alleges as follows:

# I. **INTRODUCTION**

1.      Farmers in the United States plant tens of millions of acres of corn, soybeans, and other row crops every year. To do so, they rely on specialized planting equipment. Within the past three years, Deere and Precision Planting have each introduced innovative high-speed precision planting systems that represent a "True Gamechanger for Agriculture." These systems enable farmers to plant seeds at substantially higher speeds than conventional planters without sacrificing accuracy. By allowing farmers to plant crops more quickly and accurately within the optimal planting window, high-speed precision planting systems can substantially improve crop yields. Precision Planting expects that "[h]igh speed planting will become standard in the next few years."

2.      High-speed precision planting technology took Deere and Precision Planting several years to develop. Precision Planting was first to announce its system, called SpeedTube, in 2014. Deere followed several weeks later with its own ExactEmerge high-speed precision planting system, which it viewed as a "revolutionary technology that marries planting speed and accuracy." Unlike Deere, which sold its high-speed precision planting technology bundled into new planters, Precision Planting first offered SpeedTube as a set of components that could be purchased at a relatively low cost and retrofitted onto existing planters made by planter manufacturers, including, foremost, Deere.

3.      By offering farmers high-speed precision planting retrofit kits at a fraction of the cost of a new planter, Precision Planting posed a formidable challenge to Deere and its profitable sales of new planters. Recognizing this threat, Deere executives emphasized that Precision Planting's "pricing strategy is a concern" and that Deere would need to "hit them from both a new and aftermarket approach in order to be fully successful."

4. Since launching ExactEmerge and SpeedTube in 2014, Deere and Precision Planting have remained the dominant providers of high-speed precision planting systems in the United States—accounting for at least 86% of all U.S. sales. They have competed vigorously for the business of farmers. Each company has set its prices with an eye towards the other and Deere has offered aggressive discounts and other promotions to win farmers' business. Moreover, each company responded to the other's business strategy. In August 2015, in response to the success of Precision Planting's retrofit offerings, Deere began offering its ExactEmerge system as a retrofit option. After Precision Planting reached an agreement to have SpeedTube factory-installed on the planters of one of Deere's major planter rivals, Deere executives viewed it as posing an "obvious challenge to the goals of John Deere on every level." In light of this head-to-head competition, Deere executives have recognized the formidable challenge that Precision Planting presents and have identified the company as Deere's "number one competitor."

5. In 2015—the year after Deere and Precision Planting introduced their high-speed precision planting systems—Deere renewed discussions with Precision Planting's parent company, Monsanto, about the possibility of Deere acquiring Precision Planting. In evaluating the benefits of acquiring Precision Planting, Deere estimated that eliminating competition from Precision Planting would allow it to avoid cutting its ExactEmerge prices by 5–15%. Moreover, the acquisition would allow Deere to protect its lucrative planter business by reserving the best and most advanced high-speed planting technology for new Deere planters while "temper[ing]" the growth of the provision of Precision Planting's technology to Deere's planter rivals. The acquisition would also enable Deere to temper its own growing retrofit business that it developed to compete with Precision Planting. With control over the pricing, quality, and availability of

3

Precision Planting's technology, Deere would control the availability of this "Gamechanger" to farmers.

6.      If not enjoined, Deere's proposed acquisition of Precision Planting would end the competition that exists today between Deere and Precision Planting and the competition that would otherwise continue and expand as adoption of this emerging technology increases. Deere would control nearly every method through which American farmers can acquire effective high-speed precision planting systems. Competition between Deere and Precision Planting benefits farmers through lower prices and more innovative high-speed precision planting systems in the marketplace. Accordingly, the proposed acquisition likely would lessen competition substantially, and tend to create a monopoly, in the market for high-speed precision planting systems in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.

## II. DEFENDANTS AND THE PROPOSED ACQUISITION

7.      Deere & Company is a Delaware corporation headquartered in Moline, Illinois. It manufactures and distributes a complete line of equipment and components used in agriculture, construction, forestry, and turf care. In 2015, Deere's U.S. sales for planter-related equipment were approximately $900 million. Deere is the leading seller of new planters in the U.S.

8.      Precision Planting LLC is a Delaware limited liability company headquartered in Tremont, Illinois. It manufactures precision planting equipment that is retrofitted to update existing conventional planters manufactured by Deere, Kinze Manufacturing, Inc. ("Kinze"), CNH Industrial N.V. ("Case"), and AGCO Corporation ("AGCO"). Precision Planting also has non-exclusive licensing agreements with Case and AGCO that permit these planter manufacturers to integrate Precision Planting's high-speed precision planting products and

technology into their new planters, which directly compete against Deere planters with factory-installed high-speed precision planting systems. In 2015, Precision Planting's U.S. sales for planter-related equipment were approximately $100 million.

9. Monsanto Company is a Delaware corporation headquartered in St. Louis, Missouri. It is a leading global provider of agricultural products, including seeds, herbicides, and fertilizers. Monsanto is the ultimate parent company of Precision Planting, which is currently owned by Monsanto's wholly owned subsidiary, The Climate Corporation.

10. On November 3, 2015, Deere announced that it had agreed with The Climate Corporation to acquire Precision Planting for $190 million, subject to a carve-out of some assets and adjustments. Concurrently, Deere announced that it and The Climate Corporation had entered into an exclusive data-sharing agreement that provides The Climate Corporation near real-time access to data collected from Deere equipment. The data-sharing agreement offers Monsanto considerable value in addition to the $190 million that it will receive from Deere.

### III. HIGH-SPEED PRECISION PLANTING OVERVIEW

#### A. Planters

11. A planter is a critical piece of farming machinery that is used to deliver seeds of row crops to the ground. Planters comprise two primary components: a planter toolbar and a set of row units. The planter toolbar, which is attached to a tractor that pulls the planter, provides the basic framework of the planter. Row units—typically 12 or 16 per planter—are attached to the toolbar. The row units draw seeds from a seed hopper, dispense the seeds with a seed meter, and deliver the seeds to trenches in the ground.



*Deere 12-row Planter*

12.     In the United States four manufacturers account for most planter sales:  Deere, Kinze, Case, and AGCO.  Deere is by far the largest, accounting for more than half of new planter sales.

**B.      High-Speed Precision Planting Systems**

13.     High-speed precision planting systems enable farmers to plant accurately at up to twice the speed at which they would otherwise be able to plant with conventional systems—up to 10 miles per hour.  Planting with accuracy is important because precise seed placement results in spacing that allows for ideal plant growth.  Planting at higher speeds, while maintaining precision, is valuable because it better enables farmers to plant crops within the optimal planting window—the narrow set of days each season when planting conditions are most likely to produce high crop yields.

14.     High-speed precision planting systems comprise several critical components that are incorporated in planter row units.  These components typically include a seed delivery cartridge, an advanced seed meter, an electric drive, and a control system.



*Planter Row Unit*

15.     These components together offer several important advantages over conventional planting technology.  Conventional planting systems are typically limited to planting at around 5 miles per hour to assure accurate seed placement.  These systems often have mechanically driven seed meters, which do not offer the speed, precision, or row-by-row control necessary to maintain proper seed placement, especially at higher speeds.  Conventional planting systems also employ hollow seed tubes that allow seeds to ricochet through the tube and tumble after reaching the ground, providing less accurate seed placement in the trench, particularly at higher speeds.  High-speed precision planting systems correct for these deficiencies by using electrically driven seed meters that offer precise, row-by-row control for more accurate seed placement, and by using seed-delivery cartridges that control the seed from the meter to the seed trench.  As a result of these features, seeds are delivered to the seed trench with consistent, accurate spacing at speeds up to twice conventional planting speeds.

16.     Farmers can acquire high-speed precision planting systems by purchasing a retrofit kit to update their conventional planter, or by purchasing a new planter with a high-speed

precision planting system factory-installed. Farmers purchase these systems from dealers located across the row-crop-growing regions of the United States. Effective dealer networks have a wide breadth of coverage with dealers in close proximity to the farmers themselves. This proximity ensures that if a problem arises with a farmer's high-speed precision planting system during the narrow optimum planting window, the farmer can resolve that problem quickly.

### C.   Competition in the High-Speed Precision Planting Systems Market

17.     Precision Planting and Deere spent years developing high-speed precision planting technology. In 2014, Precision Planting was first to announce its SpeedTube high-speed precision planting system, which it offered as a kit of components that could be retrofitted onto existing conventional Deere and Kinze planters. Several weeks later, Deere introduced new planters equipped with its ExactEmerge high-speed precision planting system. Both Deere's ExactEmerge and Precision's SpeedTube systems use newly developed seed delivery cartridges that are critical to high-speed precision planting. Strong patent protections, in part, ensure that Deere and Precision Planting are the only two firms offering these seed delivery cartridges.

18.     Deere has been concerned about Precision Planting's technology exerting competitive pressure on Deere's profitable ExactEmerge planter sales and on the pricing premium for those planters because Precision Planting's retrofit solutions enable farmers to upgrade their conventional planters with the latest high-speed planting technology without purchasing a new planter. Thus, a farmer who might otherwise spend over one hundred and fifty thousand dollars to purchase a new ExactEmerge planter from Deere could achieve the same results at one-fifth the cost by upgrading a conventional planter with Precision Planting's retrofit components.

19.     Deere also has been concerned that Precision Planting's technology could commoditize the planter toolbar.  Deere fears that, because Precision Planting's high-speed precision planting retrofit components can be attached to existing planter toolbars, they would foster farmers' indifference to the brand of the planter toolbar and exert competitive pressure on Deere's planter sales.

20.     Precision Planting considered Deere's ExactEmerge system when it set the price of its high-speed precision planting system and pursued a strategy of offering a lower-priced alternative to Deere.  Precision Planting set the initial dealer price of its high-speed precision planting system so that its prices would be lower than Deere's.  Deere, in turn, watched Precision Planting's pricing strategy closely, recognizing that "Precision is a tough competitor" that was "aggressively pricing these offerings."

21.     Precision Planting also has partnered with two of Deere's planter manufacturer rivals—Case and AGCO—to enable them to factory-install Precision Planting's high-speed precision planting system on their new planters.  Deere expressed alarm about these new partnerships because they would introduce competition in factory-installed high-speed precision planting systems.  As one executive explained, Precision Planting's partnership with Case "is an obvious challenge to the goals of John Deere on every level. . . .  I cannot state more emphatically how much of a threat this news is as Precision Planting now views their agreement with Case IH as an opportunity to move into the new planter category."

22.     In response to competition from Precision Planting, in August 2015, Deere started offering its ExactEmerge system also as a retrofit option to compete with Precision Planting's SpeedTube retrofit offerings.  Just as Precision Planting had looked to Deere's ExactEmerge

9

system in setting the price of its SpeedTube solution, Deere looked to Precision Planting's

SpeedTube solution in setting the price of its new ExactEmerge retrofit kits.

23.     In addition to looking to one another in setting prices, Deere and Precision

Planting have also competed through a series of promotions in which each attempted to gain

sales with aggressive financial packages.  Precision Planting, for example, introduced a rebate

and 36-month 0% financing offer on its equipment ahead of Deere's 2015 planter early-order

program, timing that Deere viewed as "No coincidence."  After hearing reports of deep

discounting by Precision Planting dealers, Deere responded by introducing a rebate incentive and

offered its own 0% financing offer that bettered Precision Planting's offer by 12 months.

24.     Similarly, Deere and Precision Planting have competed intensely for farmers'

business through advertising campaigns and industry events in which each attempted to highlight

the benefits of its own high-speed solutions over the other's, citing field tests and independent

studies that each firm had commissioned to compare the performance of the two systems.

25.     Overall, farmers have benefitted from the innovative product offerings, aggressive

discounts and promotions, and lower prices that have resulted from the intense head-to-head

competition between Deere and Precision Planting to sell high-speed precision planting systems.

## IV. <u>RELEVANT MARKETS</u>

### A.     **Relevant Product Market**

26.     High-speed precision planting systems constitute a relevant product market and

line of commerce under Section 7 of the Clayton Act.  This market includes both high-speed

precision planting systems that are factory-installed on new planters, and systems that are

retrofitted onto new and used conventional planters.

27.     These revolutionary systems incorporated in planter row units offer increased planting productivity over conventional planters, enabling farmers to plant more crops within the narrow optimal planting window.  Defendants themselves recognize the unique and groundbreaking advantages that high-speed precision planting systems offer over conventional planting systems.  Deere, for example, has described ExactEmerge as "breakthrough, revolutionary technology" that "will revolutionize the corn and soybean industry as we know it." Precision Planting has similarly recognized that its SpeedTube system represents a "True Gamechanger for Agriculture" and predicted that "[h]igh speed planting will become standard in the next few years."

28.     No reasonably interchangeable substitutes exist for high-speed precision planting systems.  Wider conventional planters are not effective substitutes for planters equipped with high-speed precision planting systems because wider planters are less maneuverable; are more expensive to purchase, operate, and maintain; have lower resale value; and have other detrimental effects on the planting process.  Precision Planting's own website, for example, acknowledges that "[t]here can be huge costs with upsizing a planter," and that "larger planters are not the answer to growing farm sizes."  Similarly, multiple conventional planters are not effective substitutes for a single planter equipped with a high-speed precision planting system because multiple conventional planters are significantly more expensive to purchase and maintain than a single planter equipped with a high-speed precision planting system, and using multiple planters requires additional specialized labor, which is often not a viable option.

29.     There are no reasonable substitutes for high-speed precision planting systems, and a hypothetical monopolist over high-speed precision planting systems likely would be able to profitably impose at least a small but significant and non-transitory increase in prices over those

11

that would prevail if Deere and Precision Planting continued to compete. Thus, the market for high-speed precision planting systems is a relevant antitrust market.

**B.    Relevant Geographic Market**

30.    The relevant geographic market is no larger than the United States. Deere and Precision Planting have a supply chain and network of dealers covering the row-crop-growing regions of the United States to offer farmers convenient sales and timely service. Farmers rely on dealers to provide service and replacement parts for their high-speed precision planting systems, and they generally do not frequent dealers that are not located near their farms because those dealers cannot deliver service and replacement parts as quickly as local dealers.

**V. <u>MARKET CONCENTRATION AND ANTICOMPETITIVE EFFECTS</u>**

31.    Deere and Precision Planting are the only two meaningful providers of high-speed precision planting systems in the United States. Deere's planned acquisition of Precision Planting, if permitted, would eliminate all competition between the two firms and likely result in substantially reduced competition in the market for high-speed precision planting systems.

32.    Though two firms—Kinze and Horsch Maschinen GmbH ("Horsch")—claim to offer comparable solutions in the United States, their planters' use of a conventional seed tube instead of a seed-delivery cartridge makes them incapable of delivering the same accuracy at high speeds as Deere's and Precision Planting's high-speed precision technology. As such, neither Deere nor Precision Planting view the Horsch or Kinze offerings as true high-speed precision planting systems. Even assuming these other firms offer truly high-speed precision planting systems, Deere's and Precision Planting's sales of high-speed precision planting systems are substantially higher than the sales of these other firms.

12

33.     The proposed acquisition would result in a single firm with a dominant share of the high-speed precision planting systems market.  Even counting Kinze's and Horsch's systems that lack seed-delivery cartridges as high-speed precision planting systems, their shares of the high-speed precision planting systems market in 2015 were approximately 12% and 2%, respectively.  Deere's share of the market, on the other hand, was approximately 44%, and Precision Planting's was approximately 42%.  Therefore, even if Kinze and Horsch were included, post-merger, Deere would control 86%, or nearly all of the relevant market.  If these two firms are excluded, consistent with Defendants' own understanding of the market, Deere would control 100% of the market—a complete monopoly.



34.     The proposed combination of the two largest competitors in the highly concentrated high-speed precision planting systems market creates a presumption that the acquisition likely substantially lessens competition and tends to create a monopoly.  As articulated in the *Horizontal Merger Guidelines*, the Herfindahl-Hirschman Index ("HHI") is a

measure of market concentration. Changes in market concentration are often a useful indicator of the likely competitive effects of a merger. When a market is highly concentrated, and a merger would increase concentration in that market, it is more likely that a transaction would result in harm. Transactions that increase the HHI by more than 200 points in highly concentrated markets where the post-merger HHI is above 2500 are presumed likely to enhance market power. Here, even accounting for Kinze's and Horsch's shares, the HHI for the high-speed precision planting systems market today exceeds 3,800, and with the acquisition the HHI would exceed 7,600. Deere's acquisition of Precision Planting is therefore presumptively anticompetitive.

35.     The proposed acquisition would likely result in higher prices in the market for high-speed precision planting systems than would exist absent the transaction. Deere estimated that its acquisition of Precision Planting would avert the need for Deere to reduce ExactEmerge pricing by 5–15% to maintain ExactEmerge's market share. Deere calculates that the "strategic value" of the acquisition—that it would retain from not having to compete with Precision Planting—ranges between $70 million and $210 million.

36.     The proposed acquisition is also likely to reduce the quality of some of the high-speed precision planting options in the market. Post-acquisition, Deere will likely seek to reposition Precision Planting's offerings to maximize the profitability of Deere's high-speed precision planters and to reduce competition between Deere's and Precision Planting's retrofit solutions. To this end, Deere executives have recommended to "temper" both Deere's growing retrofit business and Precision Planting's growing factory-install business with Case and AGCO, both of which would cannibalize Deere's high-speed precision planters business.

37.     The proposed acquisition could also enable Deere to weaken competition from rival planter manufacturers.  Deere is by far the largest manufacturer of new planters in the United States, responsible for over half of new planter sales.  Deere plans to structure future product development such that only new Deere planters will offer the best and most technologically advanced solutions, relegating the high-speed precision planting systems that would be integrated in Case's and AGCO's planters to a lower tier of quality and features.  If the acquisition were consummated, Deere would likely set the price, technology, and go-to-market timing of high-speed precision planting systems supplied to competitors to not undercut its planter sales.  This strategy would likely harm Deere's rivals, entrench Deere as the dominant provider of high-speed precision planting systems, and limit competitive choices available to farmers.

38.     The proposed acquisition has already led Deere to scale back competition with Precision Planting.  After the acquisition was announced, when discussing studies designed to highlight for farmers the distinctions between ExactEmerge and SpeedTube, Deere's then-chief agronomist recognized that "the urgency of differentiating [ExactEmerge] from [SpeedTube]" had diminished.  Similarly, Deere's marketing team had planned an advertising campaign targeting Precision Planting that would have highlighted results of tests Deere had commissioned comparing ExactEmerge to SpeedTube.  Shortly after the deal announcement, Deere's marketing team "was put in a difficult position given the Precision Planting purchase.  As such, [Deere] had to chuck [its] entire campaign."  As the Deere marketing manager responsible for the campaign explained:  "At the time of testing, they were our main competitor.  As such, the results of the tests were intended to help build our competitive advertising campaign.  You can imagine then that after the purchase, we had to scrap that approach."

39.     Overall, head-to-head competition between Deere and Precision Planting has spurred innovation, quality improvements, and lower prices in the market for high-speed precision planting systems.  That competition would likely intensify as sales grow in this nascent market.  The proposed acquisition would eliminate this important competitive pressure and allow Deere to control nearly every method through which American farmers can reasonably acquire effective high-speed precision planting systems, as Deere would be able to set price, output, quality, and features without the constraints of market competition.

## VI. LACK OF COUNTERVAILING FACTORS

40.     Barriers to economically meaningful entry or expansion in the high-speed precision planting systems market are high, and thus new entry or expansion by existing competitors is unlikely to prevent or counteract the planned acquisition's likely anticompetitive effects.  Deere and Precision Planting took years to develop the technology for their respective high-speed precision planting systems and make them available to farmers.  Other firms seeking to enter the market or expand would similarly need to spend a significant amount of time and money to develop their own products, establish a well known brand, and assemble a network of dealers with sufficient coverage to serve farmers effectively.

41.     The extensive intellectual property rights held by the Defendants, which prevent other firms from adopting important aspects of their respective high-speed precision planting systems, further inhibit entry.  Precision Planting's own executives, for example, have recognized that the company's "IP is rock solid," and "necessary to gain a foothold in the high speed market."

16

42.     The proposed acquisition is unlikely to generate verifiable, merger-specific efficiencies that would offset the planned acquisition's likely anticompetitive effects in the high-speed precision planting systems market.

## VII. <u>VIOLATION ALLEGED</u>

43.     The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain the Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.  This Court has subject matter jurisdiction over this action under Section 15 of the Clayton Act, 15 U.S.C. § 25.

44.     Defendants Deere and Precision Planting are engaged in interstate commerce and in activities substantially affecting interstate commerce.  Deere and Precision Planting sell high-speed precision planting systems throughout the United States.  They are engaged in a regular, continuous, and substantial flow of interstate commerce, and their high-speed precision planting system sales have had a substantial effect on interstate commerce.

45.     This Court has personal jurisdiction over each Defendant.  Both Deere and Precision Planting are corporations that transact business within the Northern District of Illinois through, among other things, their sales of agricultural equipment to farmers through dealerships located in this district.  Monsanto, the ultimate parent of Precision Planting, also transacts business within the Northern District of Illinois.

46.     Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22.

47.     If allowed to proceed, Deere's proposed acquisition of Precision Planting would likely lessen competition substantially, and tend to create a monopoly, in the market for high-

speed precision planting systems in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

48. Among other things, the transaction would:

    (a)    eliminate significant present and future head-to-head competition between Deere and Precision Planting in the market for high-speed precision planting systems;

    (b)    bring control of high-speed precision planting systems under one firm;

    (c)    likely cause prices of high-speed precision planting systems to be higher than they would be otherwise;

    (d)    likely cause the quality of high-speed precision planting systems to decrease; and

    (e)    likely result in the elimination of innovation rivalry by the two leading innovators in the high-speed precision planting systems market.

## **REQUEST FOR RELIEF**

49. The United States requests:

    (a)    that Deere's proposed acquisition of Precision Planting be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

    (b)    that the Defendants be permanently enjoined and restrained from carrying out the planned acquisition of Precision Planting by Deere or any other transaction that would combine the two companies;

    (c)    that the United States be awarded costs of this action; and

    (d)    that the United States be awarded such other relief as the Court may deem just and proper.

Dated this 31st day of August, 2016.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:


_____
RENATA B. HESSE
Acting Assistant Attorney General


_____
SONIA K. PFAFFENROTH
Deputy Assistant Attorney General


_____
PATRICIA A. BRINK
Director of Civil Enforcement


_____
LISA A. SCANLON
Assistant Chief, Litigation III Section


ZACHARY T. FARDON
United States Attorney
Northern District of Illinois


/s/ Thomas P. Walsh
_____
THOMAS P. WALSH
Assistant United States Attorney
United States Attorney's Office
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604
(312) 353-5300
thomas.walsh2@usdoj.gov

_____
WILLIAM H. JONES II
PAMELA P. COLE
ROBIN S. CRAUTHERS
ANDREW J. EWALT
STEVEN KRAMER
ANN LUCAS
MICHAEL RABKIN
KELSEY W. SHANNON
ADAM C. SPEEGLE
PAUL J. TORZILLI
JEFFREY G. VERNON

Trial Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Suite 4000
Washington, DC 20530
Telephone: (202) 514-0230
Facsimile: (202) 307-2784
bill.jones2@usdoj.gov