# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:16-cv-08515 |
| DEERE & COMPANY; | Judge Edmond E. Chang |
| PRECISION PLANTING LLC; and | Magistrate Judge M. David Weisman |
| MONSANTO COMPANY, | |
| *Defendants*. | |

## PRECISON PLANTING LLC AND MONSANTO COMPANY'S ANSWER

Defendants Monsanto Company ("Monsanto") and Precision Planting, LLC ("Precision Planting") (collectively, "Monsanto") by their undersigned counsel, and in answer to Plaintiff's Complaint ("Complaint"), state as follows:

## GENERAL RESPONSE TO PLAINTIFF'S ALLEGATIONS

Growers will benefit from Deere's acquisition of Precision Planting LLC. No competition will be lost as a result of the transaction. In fact, competition will intensify.

Rather than consider these competitive benefits, Plaintiff's challenge stems from a Deere competitor's fears of enhanced competition—not the best interests of growers. Tellingly, the Department of Justice, pursuant to procedures under the Hart-Scott-Rodino Act, long ago cleared this transaction to proceed, only to change its mind and bring this lawsuit when a Deere competitor protested. However, it is a fundamental maxim that antitrust laws are meant to

protect competition, not competitors. Growers deserve the benefits of this transaction and the increased innovation, competition, and consumer choice that a combination of Deere and Precision Planting will create.

Today's grower is increasingly focused on maximizing potential yield in a cost-effective way. To help growers accomplish this objective, agricultural equipment companies offer a wide variety of planting products to make planting more effective and efficient. Products that enable high-speed planting provide one feature among many from which growers choose to achieve this goal. Growers also look to a wide range of other available options to meet their own unique farming needs and optimize their yield throughout the entire crop production cycle; from planning their crop, preparing the soil, planting the seed, nurturing and protecting the plants, and harvesting. Deere's core business is providing original equipment solutions addressing these in-field tasks. Combining the efforts of Deere and Precision Planting will improve innovation across all of these tasks to help growers.

The transaction also will benefit growers by increasing the number of retail outlets where growers can purchase Precision Planting components. Deere's sophisticated dealer channel operates through large physical dealerships, a structure that is complementary to Precision Planting's existing dealer network. This combination creates a unique opportunity to bring Precision Planting's innovative components to more growers, in more geographies, more quickly, across a broader range of in-field jobs.

In addition to enhancing Deere's innovation capabilities and portfolio to better serve growers, the transaction increases grower choice and creates value by enabling Ag Leader

Technology, Inc. ("Ag Leader"), a recognized innovator in the field of agricultural equipment. As part of the transaction, Ag Leader will gain the right to manufacture, sell, and even improve upon Precision Planting's SpeedTube and other components. Ag Leader's capabilities and extensive distribution network will ensure an additional independent and competitive channel for growers and OEM's to purchase Precision Planting's SpeedTube and other components, and Ag Leader's track record of innovation will provide a new path for continued improvement of these Precision Planting products.

Post-transaction, Precision Planting's products will continue to provide retrofit solutions for a range of planter makes and models, including late-model as well as older Deere planters. Meanwhile, Deere's *ExactEmerge* planter technology will continue to provide growers seeking to buy new planters as well as those that own late-model Deere planters an opportunity to plant with greater precision at faster speeds. And through both existing contractual commitments and Deere's agreement with Ag Leader, Deere's competitors and their customers will continue to have access to Precision Planting's SpeedTube technology for their planters as well. Ultimately, the transaction provides all growers with greater choice and more independent channels through which to buy Precision Planting components. The transaction does not threaten the robust competition to provide equipment, aftermarket components, and other tools to growers. In short, the transaction will increase competition and promote consumer freedom by increasing the total number of providers. Restraining this vibrant competition and greater consumer choice in the narrow interest of a particular competitor is not in the public's interest.

# I.  INTRODUCTION

1.      *Farmers in the United States plant tens of millions of acres of corn, soybeans, and other row crops every year. To do so, they rely on specialized planting equipment. Within the past three years, Deere and Precision Planting have each introduced innovative high-speed precision planting systems that represent a "True Gamechanger for Agriculture." These systems enable farmers to plant seeds at substantially higher speeds than conventional planters without sacrificing accuracy. By allowing farmers to plant crops more quickly and accurately within the optimal planting window, high-speed precision planting systems can substantially improve crop yields. Precision Planting expects that "[h]igh speed planting will become standard in the next few years."*

**Response:**      Monsanto admits the first sentence in paragraph 1 of the Complaint.  Monsanto states that the term "specialized planting equipment" is vague and ambiguous and denies the allegations in the second sentence of paragraph 1 on that basis.  Monsanto states that the allegations in the third, fourth and fifth sentences of paragraph 1, including the terms "high-speed precision planting systems" and "conventional planters," are vague and ambiguous and on that basis Monsanto denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems."  Monsanto understands that Plaintiff's use of the phrase "high-speed precision planting systems" with respect to Monsanto is intended to refer to SpeedTube and other Precision Planting components necessary to operate SpeedTube, and Monsanto will respond accordingly with respect to this and other allegations in the Complaint.  Monsanto admits that in 2014, Precision Planting introduced

- 4 -

SpeedTube, which may enable growers to plant at somewhat higher speeds while maintaining accuracy under certain conditions, but Monsanto states that Precision Planting sells SpeedTube and other components individually and specifically denies that it has introduced or currently sells a "high-speed precision planting system". Monsanto states that Plaintiff's selective quotation of unidentified written material or communications from Precision Planting personnel in the third and fifth sentences of paragraph 1, offered without context, are misleading as framed in the Complaint, and Monsanto respectfully refers the Court to the quoted documents, if identified, for a complete and accurate description of their contents. Monsanto admits that planting at higher speeds while maintaining accuracy within the optimal planting window has the potential to improve crop yields under certain conditions. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 1 to the extent they relate to Deere, and on that basis denies these allegations.

2. *High-speed precision planting technology took Deere and Precision Planting several years to develop. Precision Planting was first to announce its system, called SpeedTube, in 2014. Deere followed several weeks later with its own ExactEmerge high-speed precision planting system, which it viewed as a "revolutionary technology that marries planting speed and accuracy." Unlike Deere, which sold its high-speed precision planting technology bundled into new planters, Precision Planting first offered SpeedTube as a set of components that could be purchased at a relatively low cost and retrofitted onto existing planters made by planter manufacturers, including, foremost, Deere.*

**Response:**    Monsanto states that the allegations in the first, third and fifth sentences of paragraph 2 of the Complaint, including the terms "high-speed precision planting technology" and "high-speed precision planting system", are vague and ambiguous, and on that basis Monsanto denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto admits that in 2014, Precision Planting introduced SpeedTube, which may enable growers to plant at somewhat higher speeds while maintaining accuracy under certain conditions, but Monsanto states that Precision Planting sells SpeedTube and other components individually and specifically denies that it has introduced or currently sells a "high-speed precision planting system" or that it offered or currently offers SpeedTube as a "set of components". Monsanto admits that, unlike Deere, Precision Planting does not sell planters, high-speed or otherwise. Monsanto states that the use of the term "relatively low cost" in the third sentence of paragraph 2 is vague and ambiguous and therefore denies that SpeedTube "could be purchased at a relatively low cost". Monsanto admits that it first offered SpeedTube as a component to be retrofitted onto existing Deere and Kinze planters. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 2 to the extent they relate to Deere, and on that basis denies these allegations.

3.      *By offering farmers high-speed precision planting retrofit kits at a fraction of the cost of a new planter, Precision Planting posed a formidable challenge to Deere and its profitable sales of new planters. Recognizing this threat, Deere executives emphasized that*

*Precision Planting's "pricing strategy is a concern" and that Deere would need to "hit them from both a new and aftermarket approach in order to be fully successful."*

**Response:**      Monsanto states that the allegations in the first sentence of paragraph 3 of the Complaint, including the terms "high-speed precision planting retrofit kits", "at a fraction of the cost" and "formidable challenge" are vague and ambiguous and on that basis denies these allegations. Monsanto states that Precision Planting sells SpeedTube and other components individually and specifically denies that it sells a "high-speed precision planting retrofit kit". Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 3 to the extent they relate to Deere, and on that basis denies these allegations.

4.      *Since launching ExactEmerge and SpeedTube in 2014, Deere and Precision Planting have remained the dominant providers of high-speed precision planting systems in the United States—accounting for at least 86% of all U.S. sales. They have competed vigorously for the business of farmers. Each company has set its prices with an eye towards the other and Deere has offered aggressive discounts and other promotions to win farmers' business. Moreover, each company responded to the other's business strategy. In August 2015, in response to the success of Precision Planting's retrofit offerings, Deere began offering its ExactEmerge system as a retrofit option. After Precision Planting reached an agreement to have SpeedTube factory-installed on the planters of one of Deere's major planter rivals, Deere executives viewed it as posing an "obvious challenge to the goals of John Deere on every level." In light of this head-to-head competition, Deere executives have recognized the formidable challenge that*

*Precision Planting presents and have identified the company as Deere's "number one competitor."*

**Response:**     Monsanto states that the allegations in the first sentence of paragraph 4 of the Complaint, including the term "high-speed precision planting systems" is vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto further denies that Precision Planting "competes vigorously" with Deere for the business of farmers. Monsanto admits that the price of ExactEmerge was one of many data points considered in setting the price of SpeedTube, but states that it was not a determinative factor, and Monsanto denies that Precision Planting has set the price of any of its other many components, including 20/20 SeedSense, vSet, and vDrive, with reference to any Deere product or pricing. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 4 to the extent they relate to Deere, and on that basis denies these allegations.

5.     *In 2015—the year after Deere and Precision Planting introduced their high-speed precision planting systems—Deere renewed discussions with Precision Planting's parent company, Monsanto, about the possibility of Deere acquiring Precision Planting. In evaluating the benefits of acquiring Precision Planting, Deere estimated that eliminating competition from Precision Planting would allow it to avoid cutting its ExactEmerge prices by 5–15%. Moreover, the acquisition would allow Deere to protect its lucrative planter business by reserving the best and most advanced high-speed planting technology for new Deere planters while "temper[ing]"*

*the growth of the provision of Precision Planting's technology to Deere's planter rivals. The acquisition would also enable Deere to temper its own growing retrofit business that it developed to compete with Precision Planting. With control over the pricing, quality, and availability of Precision Planting's technology, Deere would control the availability of this "Gamechanger" to farmers.*

**Response:**   Monsanto states that the allegations in the first and third sentences of paragraph 5 of the Complaint, including the terms "high-speed precision planting systems" and "high-speed precision planting technology" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto admits that in 2014, Precision Planting introduced SpeedTube, which may enable growers to plant at somewhat higher speeds while maintaining accuracy under certain conditions, but Monsanto states that Precision Planting sells SpeedTube and other components individually and specifically denies that it has introduced or currently sells a "high-speed precision planting system".  Monsanto admits that in 2015, Deere and Monsanto Company engaged in discussions about the possibility of Deere acquiring Precision Planting.  Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of the last four sentences of paragraph 5 to the extent they relate to Deere, and on that basis denies these allegations.

6.      *If not enjoined, Deere's proposed acquisition of Precision Planting would end the competition that exists today between Deere and Precision Planting and the competition that would otherwise continue and expand as adoption of this emerging technology increases. Deere*

*would control nearly every method through which American farmers can acquire effective high-speed precision planting systems. Competition between Deere and Precision Planting benefits farmers through lower prices and more innovative high-speed precision planting systems in the marketplace. Accordingly, the proposed acquisition likely would lessen competition substantially, and tend to create a monopoly, in the market for high-speed precision planting systems in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.*

**Response:**    Monsanto denies the allegations in the first three sentences of paragraph 6 of the Complaint.  To the contrary, Monsanto states that the proposed acquisition is pro-competitive and would benefit farmers through greater access to Precision Planting products and greater innovation around products that enhance efficiency and improve yields.  Monsanto states that the allegations in the second, third and fourth sentences of paragraph 6, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  The final sentence of paragraph 6 constitutes legal conclusions not subject to admission or denial.  To the extent a response is deemed required, Monsanto denies the allegations in the final sentence of paragraph 6.

## II.  DEFENDANTS AND THE PROPOSED ACQUISITION

7.    *Deere & Company is a Delaware corporation headquartered in Moline, Illinois. It manufactures and distributes a complete line of equipment and components used in agriculture, construction, forestry, and turf care. In 2015, Deere's U.S. sales for planter-related*

- 10 -

*equipment were approximately $900 million. Deere is the leading seller of new planters in the U.S.*

**Response:**    On information and belief, Monsanto admits the first sentence of paragraph 7 of the Complaint and admits that Deere is a significant seller of new planters in the United States. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's remaining allegations in paragraph 7, and on that basis denies these allegations.

8.    *Precision Planting LLC is a Delaware limited liability company headquartered in Tremont, Illinois. It manufactures precision planting equipment that is retrofitted to update existing conventional planters manufactured by Deere, Kinze Manufacturing, Inc. ("Kinze"), CNH Industrial N.V. ("Case"), and AGCO Corporation ("AGCO"). Precision Planting also has non-exclusive licensing agreements with Case and AGCO that permit these planter manufacturers to integrate Precision Planting's high-speed precision planting products and technology into their new planters, which directly compete against Deere planters with factory-installed high-speed precision planting systems. In 2015, Precision Planting's U.S. sales for planter-related equipment were approximately $100 million.*

**Response:**    Monsanto admits that Precision Planting LLC is a Delaware limited liability company headquartered in Tremont, Illinois.  Monsanto states that Precision Planting develops and sells a range of precision planting equipment that can be retrofitted onto existing planters manufactured by planter companies including Deere, Kinze, Case, and AGCO, among others. Monsanto states that the allegations in the second and third sentences of paragraph 8 of the Complaint, including the terms "conventional planters", "high-speed precision planting products

and technology" and "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto denies that Precision Planting has a license agreement with either Case or AGCO. Monsanto states that Monsanto Company has a non-exclusive supply and licensing agreement with Case that enables Case to integrate Precision Planting components, including SpeedTube, the sole component that Precision Planting supplies that enables planting at higher speeds, into its new planters. Monsanto states that Precision Planting has a supply agreement with AGCO that enables AGCO to integrate Precision Planting components, including SpeedTube, into its new planters. Monsanto admits that new Case and AGCO planters with SpeedTube factory installed compete directly with various planters, including Deere's ExactEmerge planters. Monsanto states that the allegations in the last sentence in paragraph 8, including the term "U.S. sales for planter-related equipment" are vague and ambiguous and on that basis denies these allegations.

9.      *Monsanto Company is a Delaware corporation headquartered in St. Louis, Missouri. It is a leading global provider of agricultural products, including seeds, herbicides, and fertilizers. Monsanto is the ultimate parent company of Precision Planting, which is currently owned by Monsanto's wholly owned subsidiary, The Climate Corporation.*

**Response:**      Monsanto admits the first sentence of paragraph 9 of the Complaint. Monsanto admits that Monsanto Company is a global provider of agricultural products including seeds and herbicides, but denies that Monsanto Company is a "leading global provider" of "fertilizers". Monsanto Company is the ultimate parent company of Precision Planting and Monsanto

Company also directly owns Precision Planting and thus Monsanto denies that Precision Planting is currently owned by The Climate Corporation.

10.     *On November 3, 2015, Deere announced that it had agreed with The Climate Corporation to acquire Precision Planting for $190 million, subject to a carve-out of some assets and adjustments. Concurrently, Deere announced that it and The Climate Corporation had entered into an exclusive data-sharing agreement that provides The Climate Corporation near real-time access to data collected from Deere equipment. The data-sharing agreement offers Monsanto considerable value in addition to the $190 million that it will receive from Deere.*

**Response:**     Upon information and belief, Monsanto admits that on November 3, 2015, Deere announced that it had agreed to acquire Precision Planting. Monsanto states that Deere agreed to acquire Precision Planting from Monsanto Company, not from The Climate Corporation. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegation that Deere announced that the purchase price to acquire Precision Planting acquisition was $190 million and on that basis denies the allegation. Monsanto denies that concurrent with the announcement that Deere had agreed to acquire Precision Planting, Deere announced that it had entered an "exclusive data-sharing agreement" with The Climate Corporation, as Deere can and does share the data covered by the agreement with various other companies. Monsanto states that, concurrent with the announcement that Deere had agreed to acquire Precision Planting, Deere announced that it had entered a separate agreement with The Climate Corporation to enable exclusive near real-time data connectivity between certain Deere

- 13 -

farm equipment and the Climate FieldView platform.  Monsanto states that the allegations in the last sentence of paragraph 10 of the Complaint, including the term "considerable value", are vague and ambiguous and on that basis denies the allegations in the final sentence of paragraph 10.

### III.  HIGH-SPEED PRECISION PLANTING OVERVIEW

#### A.  Planters

11.  *A planter is a critical piece of farming machinery that is used to deliver seeds of row crops to the ground. Planters comprise two primary components: a planter toolbar and a set of row units. The planter toolbar, which is attached to a tractor that pulls the planter, provides the basic framework of the planter. Row units—typically 12 or 16 per planter—are attached to the toolbar. The row units draw seeds from a seed hopper, dispense the seeds with a seed meter, and deliver the seeds to trenches in the ground.*

**Response:**      Monsanto admits that planters are important to farmers who plant row crops and that planters are used to deliver seeds of row crops into the ground, that planters are comprised of toolbars and row units, that planters can be attached to and pulled behind tractors, that some planters have 12 or 16 row units (while others have fewer or many more) attached to the toolbar and that planter row units include seed hoppers or other equipment from which seeds are drawn, a meter or other equipment to dispense the seeds, and equipment to deliver seeds to the trenches in the ground.  Monsanto denies the remaining allegations in paragraph 11 of the Complaint.

- 14 -

12.     *In the United States four manufacturers account for most planter sales: Deere, Kinze, Case, and AGCO. Deere is by far the largest, accounting for more than half of new planter sales.*

**Response:**     Monsanto states that the allegations in the first sentence of paragraph 12 of the Complaint, including the term "account for most planter sales" are vague and ambiguous and on that basis denies them. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegation that Deere, Kinze, Case, and AGCO are the four largest sellers of new planters in the United States, but states that Deere, Kinze, Case, and AGCO together have manufactured the majority of planters sold in the United States, although there are numerous other companies that sell planters in the United States. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in the second sentence of paragraph 12, and on that basis denies them.

### B.     High-Speed Precision Planting Systems

13.     *High-speed precision planting systems enable farmers to plant accurately at up to twice the speed at which they would otherwise be able to plant with conventional systems—up to 10 miles per hour. Planting with accuracy is important because precise seed placement results in spacing that allows for ideal plant growth. Planting at higher speeds, while maintaining precision, is valuable because it better enables farmers to plant crops within the optimal planting window—the narrow set of days each season when planting conditions are most likely to produce high crop yields.*

**Response:**    Monsanto states that the allegations in the first sentence of paragraph 13 of the Complaint, including the terms "high-speed precision planting systems" and "conventional systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto states that the allegations in the second sentence of paragraph 13 are vague and ambiguous, in particular the terms "planting with accuracy" and "ideal plant growth" and denies these allegations on that basis. Monsanto states that the allegations in the third sentence of paragraph 13 are vague and ambiguous, in particular the term "valuable" and denies these allegations on that basis.

14.    *High-speed precision planting systems comprise several critical components that are incorporated in planter row units. These components typically include a seed delivery cartridge, an advanced seed meter, an electric drive, and a control system.*

**Response:**    Monsanto states that the allegations in the first sentence of paragraph 14 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto admits that some planters may include a seed tube or other method of seed delivery, a seed meter, a drive and/or a control system among their row unit components. Monsanto denies the remaining allegations in this paragraph.

15.    *These components together offer several important advantages over conventional planting technology. Conventional planting systems are typically limited to planting at around 5*

*miles per hour to assure accurate seed placement. These systems often have mechanically driven seed meters, which do not offer the speed, precision, or row-by-row control necessary to maintain proper seed placement, especially at higher speeds. Conventional planting systems also employ hollow seed tubes that allow seeds to ricochet through the tube and tumble after reaching the ground, providing less accurate seed placement in the trench, particularly at higher speeds. High-speed precision planting systems correct for these deficiencies by using electrically driven seed meters that offer precise, row-by-row control for more accurate seed placement, and by using seed-delivery cartridges that control the seed from the meter to the seed trench. As a result of these features, seeds are delivered to the seed trench with consistent, accurate spacing at speeds up to twice conventional planting speeds.*

**Response:**    Monsanto states that the allegations contained in paragraph 15 of the Complaint, and in particular the terms "conventional planting technology", "conventional planting systems", "high-speed precision planting systems" and "seed-delivery cartridges" are vague and ambiguous and therefore denies the allegations in paragraph 15, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto denies the remaining allegations in paragraph 15.

16.    *Farmers can acquire high-speed precision planting systems by purchasing a retrofit kit to update their conventional planter, or by purchasing a new planter with a high-speed precision planting system factory-installed. Farmers purchase these systems from dealers located across the row-crop-growing regions of the United States. Effective dealer networks have a wide breadth of coverage with dealers in close proximity to the farmers themselves. This*

*proximity ensures that if a problem arises with a farmer's high-speed precision planting system*

*during the narrow optimum planting window, the farmer can resolve that problem quickly.*

**Response:**     Monsanto states that the allegations in the first and fourth sentences of

paragraph 16 of the Complaint, including the terms "high-speed precision planting system[s]"

and "conventional planter" are vague and ambiguous, and on that basis denies these allegations,

and Monsanto specifically denies that there is any meaningful economic market consisting of

"high-speed precision planting systems".   Monsanto admits that farmers purchase components

from dealers to update their planters and purchase new planters from dealers.  Monsanto denies

the third sentence of paragraph 16.  Monsanto states that there are benefits to dealers being in

close proximity to growers, but dealers are not limited geographically in sales to growers and

dealer networks can be effective without being in close proximity to every customer.  Monsanto

denies the last sentence of paragraph 16.  Monsanto states that a dealer's proximity to a grower is

not the determinative factor in resolving a problem with the grower's specific planting

components, including SpeedTube, in a timely manner.

C.      **Competition in the High-Speed Precision Planting Systems Market**

17.     *Precision Planting and Deere spent years developing high-speed precision*

*planting technology. In 2014, Precision Planting was first to announce its SpeedTube high-speed*

*precision planting system, which it offered as a kit of components that could be retrofitted onto*

*existing conventional Deere and Kinze planters. Several weeks later, Deere introduced new*

*planters equipped with its ExactEmerge high-speed precision planting system. Both Deere's*

*ExactEmerge and Precision's SpeedTube systems use newly developed seed delivery cartridges*

- 18 -

*that are critical to high-speed precision planting. Strong patent protections, in part, ensure that*

*Deere and Precision Planting are the only two firms offering these seed delivery cartridges.*

**Response:**     Monsanto states that the allegations in the first, second, third and fourth sentences

of paragraph 17 of the Complaint, including the terms "high-speed precision planting

technology", "high-speed precision planting system", "conventional Deere and Kinze planters",

"Precision's SpeedTube systems" and "high-speed precision planting" are vague and ambiguous,

and on that basis denies these allegations, and Monsanto specifically denies that there is any

meaningful economic market consisting of "high-speed precision planting systems".  Monsanto

states that development of SpeedTube began in 2010 and that its SpeedTube component was

announced in 2014.  Monsanto denies that it offered or currently offers SpeedTube as a "kit of

components".  Monsanto states that the allegations in the fourth and fifth sentences of

paragraph 17, including the use of the term "seed delivery cartridges", are vague and ambiguous

and on that basis denies these allegations.  Monsanto lacks knowledge or information sufficient

to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 17 to the extent

they relate to Deere, and on that basis denies these allegations.

18.     *Deere has been concerned about Precision Planting's technology exerting*

*competitive pressure on Deere's profitable ExactEmerge planter sales and on the pricing*

*premium for those planters because Precision Planting's retrofit solutions enable farmers to*

*upgrade their conventional planters with the latest high-speed planting technology without*

*purchasing a new planter. Thus, a farmer who might otherwise spend over one hundred and fifty*

*thousand dollars to purchase a new ExactEmerge planter from Deere could achieve the same*

*results at one-fifth the cost by upgrading a conventional planter with Precision Planting's*
*retrofit components.*

**Response:**     Monsanto states that the allegations in the first and second sentences of paragraph
18 of the Complaint, including the terms "conventional planter[s]" and "high-speed precision
planting technology" are vague and ambiguous, and on that basis denies these allegations, and
Monsanto specifically denies that there is any meaningful economic market consisting of "high-
speed precision planting systems".  Monsanto lacks knowledge or information sufficient to form
a belief about the truth or falsity of Plaintiff's allegations in paragraph 18 to the extent they relate
to Deere, and on that basis denies these allegations.

19.     *Deere also has been concerned that Precision Planting's technology could*
*commoditize the planter toolbar. Deere fears that, because Precision Planting's high-speed*
*precision planting retrofit components can be attached to existing planter toolbars, they would*
*foster farmers' indifference to the brand of the planter toolbar and exert competitive pressure on*
*Deere's planter sales.*

**Response:**     Monsanto states that the allegations in the second sentence of paragraph 19 of the
Complaint, including the term "high-speed precision planting retrofit components" are vague and
ambiguous, and on that basis denies these allegations.  Monsanto lacks knowledge or
information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in
paragraph 19 to the extent they relate to Deere, and on that basis denies these allegations.

20.     *Precision Planting considered Deere's ExactEmerge system when it set the price*
*of its high-speed precision planting system and pursued a strategy of offering a lower-priced*

*alternative to Deere. Precision Planting set the initial dealer price of its high-speed precision planting system so that its prices would be lower than Deere's. Deere, in turn, watched Precision Planting's pricing strategy closely, recognizing that "Precision is a tough competitor" that was "aggressively pricing these offerings."*

**Response:** Monsanto admits that the price of ExactEmerge was one of many data points considered in setting the price of SpeedTube, but states that it was not a determinative factor. Monsanto states that the allegations in the first and second sentences of paragraph 20 of the Complaint, including the term "high-speed precision planting system" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 20 to the extent they relate to Deere, and on that basis denies the third sentence in paragraph 20.

21. *Precision Planting also has partnered with two of Deere's planter manufacturer rivals—Case and AGCO—to enable them to factory-install Precision Planting's high-speed precision planting system on their new planters. Deere expressed alarm about these new partnerships because they would introduce competition in factory-installed high-speed precision planting systems. As one executive explained, Precision Planting's partnership with Case "is an obvious challenge to the goals of John Deere on every level. . . . I cannot state more emphatically how much of a threat this news is as Precision Planting now views their agreement with Case IH as an opportunity to move into the new planter category."*

- 21 -

**Response:** Monsanto states that the allegations in the first and second sentences of paragraph 21 of the Complaint, including the term "high-speed precision planting system[s]" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto states that Precision Planting has agreements with Case and AGCO that enable Case and AGCO to factory-install Precision Planting's SpeedTube component and other Precision Planting products. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 21 to the extent they relate to Deere, and on that basis denies these allegations.

22. *In response to competition from Precision Planting, in August 2015, Deere started offering its ExactEmerge system also as a retrofit option to compete with Precision Planting's SpeedTube retrofit offerings. Just as Precision Planting had looked to Deere's ExactEmerge system in setting the price of its SpeedTube solution, Deere looked to Precision Planting's SpeedTube solution in setting the price of its new ExactEmerge retrofit kits.*

**Response:** Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 22 of the Complaint to the extent they relate to Deere and on that basis denies these allegations. To the extent that Monsanto is required to respond to the allegations in paragraph 22, Monsanto admits that the price of ExactEmerge was one of the many data points considered in setting the price of SpeedTube, but states that it was not a determinative factor.

23.     *In addition to looking to one another in setting prices, Deere and Precision Planting have also competed through a series of promotions in which each attempted to gain sales with aggressive financial packages. Precision Planting, for example, introduced a rebate and 36-month 0% financing offer on its equipment ahead of Deere's 2015 planter early-order program, timing that Deere viewed as "No coincidence." After hearing reports of deep discounting by Precision Planting dealers, Deere responded by introducing a rebate incentive and offered its own 0% financing offer that bettered Precision Planting's offer by 12 months.*

**Response:**     Monsanto denies that it competed with Deere by offering promotions or "aggressive financial packages".  Monsanto states that from June 1, 2015 through August 28, 2015, Precision Planting offered a rebate for growers who purchased both vDrive and DeltaForce, its electric drive and hydraulic downforce control products, respectively, and the rebate offer did not involve SpeedTube.  Monsanto states that from June 1, 2015 to August 28, 2015, Precision Planting offered 36-month, 0% financing on any orders over $10,000 of new Precision Planting components.  Monsanto denies that these rebate and financing offers or any other subsequent Precision Planting discount, promotion or financing offer were established in response to any Deere pricing, discount or rebate plan, including Deere's 2015 planter early-order program.  Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in the final sentence of paragraph 23 of the Complaint to the extent they relate to Deere, and on that basis denies these allegations.

24.     *Similarly, Deere and Precision Planting have competed intensely for farmers' business through advertising campaigns and industry events in which each attempted to*

- 23 -

*highlight the benefits of its own high-speed solutions over the other's, citing field tests and independent studies that each firm had commissioned to compare the performance of the two systems.*

**Response:** Monsanto denies the allegations in paragraph 24 of the Complaint.

25. *Overall, farmers have benefitted from the innovative product offerings, aggressive discounts and promotions, and lower prices that have resulted from the intense head-to-head competition between Deere and Precision Planting to sell high-speed precision planting systems.*

**Response:** Monsanto states that the allegations in the first sentence of paragraph 25 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 25 to the extent they relate to Deere, and on that basis denies these allegations. Monsanto denies the remaining allegations in this paragraph.

## IV.  RELEVANT MARKETS

### A.  Relevant Product Market

26. *High-speed precision planting systems constitute a relevant product market and line of commerce under Section 7 of the Clayton Act. This market includes both high-speed precision planting systems that are factory-installed on new planters, and systems that are retrofitted onto new and used conventional planters.*

**Response:**     The allegations in paragraph 26 of the Complaint are legal conclusions not subject to admission or denial.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 26.

27.     *These revolutionary systems incorporated in planter row units offer increased planting productivity over conventional planters, enabling farmers to plant more crops within the narrow optimal planting window. Defendants themselves recognize the unique and groundbreaking advantages that high-speed precision planting systems offer over conventional planting systems. Deere, for example, has described ExactEmerge as "breakthrough, revolutionary technology" that "will revolutionize the corn and soybean industry as we know it." Precision Planting has similarly recognized that its SpeedTube system represents a "True Gamechanger for Agriculture" and predicted that "[h]igh speed planting will become standard in the next few years."*

**Response:**     Monsanto states that the allegations in the first and second sentences of paragraph 27 of the Complaint, including the terms "high-speed precision planting systems", "conventional planters" and "conventional planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 27 to the extent they relate Deere, and on that basis denies these allegations. Monsanto states that Plaintiff's selective quotation of unidentified written material or communications from Precision Planting personnel in the last sentence of paragraph 27, offered

without context, is misleading as framed in the Complaint, and Monsanto respectfully refers the Court to the quoted document, if identified, for a complete and accurate description of its contents. To the extent any additional response is required, Monsanto denies the remaining allegations in this paragraph.

28. *No reasonably interchangeable substitutes exist for high-speed precision planting systems. Wider conventional planters are not effective substitutes for planters equipped with high-speed precision planting systems because wider planters are less maneuverable; are more expensive to purchase, operate, and maintain; have lower resale value; and have other detrimental effects on the planting process. Precision Planting's own website, for example, acknowledges that "[t]here can be huge costs with upsizing a planter," and that "larger planters are not the answer to growing farm sizes." Similarly, multiple conventional planters are not effective substitutes for a single planter equipped with a high-speed precision planting system because multiple conventional planters are significantly more expensive to purchase and maintain than a single planter equipped with a high-speed precision planting system, and using multiple planters requires additional specialized labor, which is often not a viable option.*

**Response:**     Monsanto states that the allegations in the first, second and fourth sentences of paragraph 28 of the Complaint, including the terms "high-speed precision planting system[s]" and "conventional planters" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto states that Plaintiff's selective quotation of unidentified written material from Precision Planting's website in the third sentence of paragraph

28, offered without context, is misleading as framed in the Complaint, and on that basis denies

the allegations in the third sentence of paragraph 28.  Monsanto respectfully refers the Court to

the Precision Planting website for a complete and accurate description of its contents.  Monsanto

lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's

allegations in the last sentence of paragraph 28, and on that basis denies these allegations.

29.     *There are no reasonable substitutes for high-speed precision planting systems,*
*and a hypothetical monopolist over high-speed precision planting systems likely would be able to*
*profitably impose at least a small but significant and non-transitory increase in prices over those*
*that would prevail if Deere and Precision Planting continued to compete. Thus, the market for*
*high-speed precision planting systems is a relevant antitrust market.*

**Response:**      The allegations in paragraph 29 of the Complaint constitute conclusions of law to

which no response is required.  To the extent a response is required, Monsanto states that the

allegations in the first and second sentences of paragraph 29, including the terms "high-speed

precision planting systems" are vague and ambiguous, and on that basis denies these allegations,

and Monsanto specifically denies that there is any meaningful economic market consisting of

"high-speed precision planting systems".  Monsanto denies the remaining allegations in

paragraph 29.

**B.     Relevant Geographic Market**

30.     *The relevant geographic market is no larger than the United States. Deere and*
*Precision Planting have a supply chain and network of dealers covering the row-crop-growing*
*regions of the United States to offer farmers convenient sales and timely service. Farmers rely on*

- 27 -

*dealers to provide service and replacement parts for their high-speed precision planting systems, and they generally do not frequent dealers that are not located near their farms because those dealers cannot deliver service and replacement parts as quickly as local dealers.*

**Response:**     The allegations in the first sentence of paragraph 30 of the Complaint constitute conclusions of law to which no response is required.  To the extent a response is required, Monsanto denies the allegations in the first sentence of paragraph 30.  Monsanto states that the allegations in the second sentence of paragraph 30, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto denies the last sentence of paragraph 30.

### V.  MARKET CONCENTRATION AND ANTICOMPETITIVE EFFECTS

31.     *Deere and Precision Planting are the only two meaningful providers of high-speed precision planting systems in the United States. Deere's planned acquisition of Precision Planting, if permitted, would eliminate all competition between the two firms and likely result in substantially reduced competition in the market for high-speed precision planting systems.*

**Response:**     Monsanto states that the allegations in paragraph 31 of the Complaint, including the term high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto denies the remaining allegations in paragraph 31.

- 28 -

32.     *Though two firms—Kinze and Horsch Maschinen GmbH ("Horsch")—claim to offer comparable solutions in the United States, their planters' use of a conventional seed tube instead of a seed-delivery cartridge makes them incapable of delivering the same accuracy at high speeds as Deere's and Precision Planting's high-speed precision technology. As such, neither Deere nor Precision Planting view the Horsch or Kinze offerings as true high-speed precision planting systems. Even assuming these other firms offer truly high-speed precision planting systems, Deere's and Precision Planting's sales of high-speed precision planting systems are substantially higher than the sales of these other firms.*

**Response:**     Monsanto states that the allegations in paragraph 32 of the Complaint, including the terms "high-speed precision planting systems", "true high-speed precision planting systems" and "high-speed precision technology" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 32 to the extent they relate to Kinze, Horsch and Deere, and on that basis denies these allegations.

33.     *The proposed acquisition would result in a single firm with a dominant share of the high-speed precision planting systems market. Even counting Kinze's and Horsch's systems that lack seed-delivery cartridges as high-speed precision planting systems, their shares of the high-speed precision planting systems market in 2015 were approximately 12% and 2%, respectively. Deere's share of the market, on the other hand, was approximately 44%, and*

- 29 -

*Precision Planting's was approximately 42%. Therefore, even if Kinze and Horsch were included, post-merger, Deere would control 86%, or nearly all of the relevant market. If these two firms are excluded, consistent with Defendants' own understanding of the market, Deere would control 100% of the market—a complete monopoly.*

**Response:**     Monsanto states that the allegations in the first and second sentences of paragraph 33 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto denies the remaining allegations in paragraph 33.

34.     *The proposed combination of the two largest competitors in the highly concentrated high-speed precision planting systems market creates a presumption that the acquisition likely substantially lessens competition and tends to create a monopoly. As articulated in the Horizontal Merger Guidelines, the Herfindahl-Hirschman Index ("HHI") is a measure of market concentration. Changes in market concentration are often a useful indicator of the likely competitive effects of a merger. When a market is highly concentrated, and a merger would increase concentration in that market, it is more likely that a transaction would result in harm. Transactions that increase the HHI by more than 200 points in highly concentrated markets where the post-merger HHI is above 2500 are presumed likely to enhance market power. Here, even accounting for Kinze's and Horsch's shares, the HHI for the highspeed precision planting systems market today exceeds 3,800, and with the acquisition the HHI would*

- 30 -

*exceed 7,600. Deere's acquisition of Precision Planting is therefore presumptively anticompetitive.*

**Response:** Plaintiff's allegation in the first sentence of paragraph 34 of the Complaint constitutes a conclusion of law to which no response is required. To the extent a response is required, Monsanto states that the allegations in the first and sixth sentences of paragraph 34, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto admits that the HHI is a measure of market concentration. Monsanto states that the Horizontal Merger Guidelines speak for themselves. Monsanto denies the remaining allegations in paragraph 34.

35. *The proposed acquisition would likely result in higher prices in the market for high-speed precision planting systems than would exist absent the transaction. Deere estimated that its acquisition of Precision Planting would avert the need for Deere to reduce ExactEmerge pricing by 5–15% to maintain ExactEmerge's market share. Deere calculates that the "strategic value" of the acquisition—that it would retain from not having to compete with Precision Planting—ranges between $70 million and $210 million.*

**Response:** Monsanto states that the allegations in the first sentence of paragraph 35 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of

Plaintiff's allegations in the second and third sentences of paragraph 35 to the extent they relate to Deere, and on that basis denies these allegations.

36.    *The proposed acquisition is also likely to reduce the quality of some of the high-speed precision planting options in the market. Post-acquisition, Deere will likely seek to reposition Precision Planting's offerings to maximize the profitability of Deere's high-speed precision planters and to reduce competition between Deere's and Precision Planting's retrofit solutions. To this end, Deere executives have recommended to "temper" both Deere's growing retrofit business and Precision Planting's growing factory-install business with Case and AGCO, both of which would cannibalize Deere's high-speed precision planters business.*

**Response:**    Monsanto states that the allegations in paragraph 36 of the Complaint, including the terms "high-speed precision planting options" and "high-speed precision planting planters" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".  Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in the second and third sentences of paragraph 36 to the extent they relate to Deere, and on that basis denies these allegations.

37.    *The proposed acquisition could also enable Deere to weaken competition from rival planter manufacturers. Deere is by far the largest manufacturer of new planters in the United States, responsible for over half of new planter sales. Deere plans to structure future product development such that only new Deere planters will offer the best and most technologically advanced solutions, relegating the high-speed precision planting systems that*

*would be integrated in Case's and AGCO's planters to a lower tier of quality and features. If the acquisition were consummated, Deere would likely set the price, technology, and go-to-market timing of high-speed precision planting systems supplied to competitors to not undercut its planter sales. This strategy would likely harm Deere's rivals, entrench Deere as the dominant provider of high-speed precision planting systems, and limit competitive choices available to farmers.*

**Response:**      Monsanto states that the allegations in the third, fourth and fifth sentences of paragraph 37 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 37 to the extent they relate to Deere, and on that basis denies these allegations. To the extent a response is deemed required, Monsanto denies the allegation in paragraph 37.

38.      *The proposed acquisition has already led Deere to scale back competition with Precision Planting. After the acquisition was announced, when discussing studies designed to highlight for farmers the distinctions between ExactEmerge and SpeedTube, Deere's then-chief agronomist recognized that "the urgency of differentiating [ExactEmerge] from [SpeedTube]" had diminished. Similarly, Deere's marketing team had planned an advertising campaign targeting Precision Planting that would have highlighted results of tests Deere had commissioned comparing ExactEmerge to SpeedTube. Shortly after the deal announcement,*

*Deere's marketing team "was put in a difficult position given the Precision Planting purchase. As such, [Deere] had to chuck [its] entire campaign." As the Deere marketing manager responsible for the campaign explained: "At the time of testing, they were our main competitor. As such, the results of the tests were intended to help build our competitive advertising campaign. You can imagine then that after the purchase, we had to scrap that approach."*

**Response:** Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 38 of the Complaint, and on that basis denies these allegations.

39. *Overall, head-to-head competition between Deere and Precision Planting has spurred innovation, quality improvements, and lower prices in the market for high-speed precision planting systems. That competition would likely intensify as sales grow in this nascent market. The proposed acquisition would eliminate this important competitive pressure and allow Deere to control nearly every method through which American farmers can reasonably acquire effective high-speed precision planting systems, as Deere would be able to set price, output, quality, and features without the constraints of market competition.*

**Response:** Monsanto states that the allegations in the first and third sentences of paragraph 39 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in paragraph 39 to the extent they relate to Deere, and on that basis denies

these allegations. Monsanto denies the final sentence of paragraph 39 and states that Case and AGCO, in addition to other companies, will have the ability to manufacture planters that enable planting at higher speeds post-acquisition that will continue to compete with Deere's ExactEmerge planters. Furthermore, Monsanto states that other companies offer planters or have the ability to offer planters in the U.S. that enable precise planting at higher speeds. Monsanto denies the remaining allegations in this paragraph.

## VI. LACK OF COUNTERVAILING FACTORS

40. *Barriers to economically meaningful entry or expansion in the high-speed precision planting systems market are high, and thus new entry or expansion by existing competitors is unlikely to prevent or counteract the planned acquisition's likely anticompetitive effects. Deere and Precision Planting took years to develop the technology for their respective high-speed precision planting systems and make them available to farmers. Other firms seeking to enter the market or expand would similarly need to spend a significant amount of time and money to develop their own products, establish a well known brand, and assemble a network of dealers with sufficient coverage to serve farmers effectively.*

**Response:** The first sentence of paragraph 40 of the Complaint constitutes a conclusion of law to which no response is required. To the extent a response is required, Monsanto states that the allegations in the first sentence of paragraph 40 and in the second sentence of paragraph 40, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto states that

- 35 -

other companies are poised to offer products that enable precise planting at higher speeds in the U.S. For example, Vaderstad, a Swedish company, has developed a positive air technology that enables planting at higher speeds and is incorporated into its Tempo planter. Vaderstad recently expanded into Canada, has a U.S. sales representative and is continuing its expansion, offering Tempo planters in the U.S. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in the second sentence of paragraph 40 to the extent they relate to Deere, and on that basis denies these allegations. Monsanto admits that development of SpeedTube began in 2010 and that SpeedTube was introduced in 2014. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of Plaintiff's allegations in the last sentence of paragraph 40 to the extent they relate to entities other than Monsanto, and on that basis denies these allegations. On information and belief, Monsanto states that other companies already present in the U.S. are developing and/or are in a position to develop their own products that enable precise planting at higher speeds and/or license technology that enables planting at higher speeds from other companies that already have such technology.

41. *The extensive intellectual property rights held by the Defendants, which prevent other firms from adopting important aspects of their respective high-speed precision planting systems, further inhibit entry. Precision Planting's own executives, for example, have recognized that the company's "IP is rock solid," and "necessary to gain a foothold in the high speed market."*

**Response:** Monsanto states that the allegations in the first sentence of paragraph 41 of the

Complaint, including the term "high-speed precision planting systems" are vague and

ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that

there is any meaningful economic market consisting of "high-speed precision planting systems".

Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of

Plaintiff's allegation in the first sentence of paragraph 41 to the extent it relates to entities other

than Monsanto, and on that basis denies the allegations. Monsanto states that multiple

companies, including Vaderstad, Case, and Kinze have acquired and/or are in the process of

acquiring intellectual property rights in the United States related to high-speed precision planting

despite any intellectual property held by the Defendants. Monsanto states that Plaintiff's

selective quotation of unidentified written material or communications from Precision Planting

personnel in the second sentence of paragraph 41, offered without context, is misleading as

framed in the Complaint, and Monsanto respectfully refers the Court to the quoted document, if

identified, for a complete and accurate description of its contents. Monsanto denies the

remaining allegations in this paragraph.

42. *The proposed acquisition is unlikely to generate verifiable, merger-specific*

*efficiencies that would offset the planned acquisition's likely anticompetitive effects in the high-*

*speed precision planting systems market.*

**Response:** Monsanto states that the allegations in paragraph 42 of the Complaint, including

the term "high-speed precision planting systems" are vague and ambiguous, and on that basis

denies these allegations, and Monsanto specifically denies that there is any meaningful economic

market consisting of "high-speed precision planting systems". Monsanto denies the remaining allegations in this paragraph.

## VII. <u>VIOLATION ALLEGED</u>

43.     *The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain the Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. This Court has subject matter jurisdiction over this action under Section 15 of the Clayton Act, 15 U.S.C. § 25.*

**Response:**     The allegations in paragraph 43 of the Complaint that the Court has subject matter jurisdiction under 15 U.S.C. § 25 and that the action is necessary to prevent violations of 15 U.S.C. § 18 are legal conclusions not subject to admission or denial.  To the extent a response is required, Monsanto denies that the proposed acquisition would violate any provision of law.

44.     *Defendants Deere and Precision Planting are engaged in interstate commerce and in activities substantially affecting interstate commerce. Deere and Precision Planting sell high-speed precision planting systems throughout the United States. They are engaged in a regular, continuous, and substantial flow of interstate commerce, and their high-speed precision planting system sales have had a substantial effect on interstate commerce.*

**Response:**     Paragraph 44 of the Complaint alleges legal conclusions to which no response is required.  To the extent a response is required, Monsanto states that the allegations in the second and third sentences of paragraph 44, including the term "high-speed precision planting system[s]" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed

precision planting systems".  Monsanto admits Precision Planting is engaged in interstate commerce and that it sells various products in multiple states.  Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 44 to the extent they relate to Deere, and therefore denies these allegations.  Monsanto denies the remaining allegations in this paragraph.

45.     *This Court has personal jurisdiction over each Defendant. Both Deere and Precision Planting are corporations that transact business within the Northern District of Illinois through, among other things, their sales of agricultural equipment to farmers through dealerships located in this district. Monsanto, the ultimate parent of Precision Planting, also transacts business within the Northern District of Illinois.*

**Response:**     The allegations in paragraph 45 of the Complaint that this Court has personal jurisdiction over Monsanto and Precision Planting are legal conclusions not subject to admission or denial.  Monsanto denies that Precision Planting is a corporation, but admits that Precision Planting is a non-corporate entity that transacts business within the Northern District of Illinois. Monsanto admits that Monsanto Company is a corporation, that it is the ultimate parent of Precision Planting, and that it transacts business within the Northern District of Illinois. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 45 to the extent they relate to Deere, and therefore denies these allegations.

46.     *Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22.*

- 39 -

**Response:** The allegations in paragraph 46 of the Complaint that venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22 is a legal conclusion not subject to admission or denial. Monsanto lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 46 to the extent they relate to Deere, and therefore denies these allegations.

47. *If allowed to proceed, Deere's proposed acquisition of Precision Planting would likely lessen competition substantially, and tend to create a monopoly, in the market for high-speed precision planting systems in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.*

**Response:** The allegations in paragraph 47 of the Complaint are legal conclusions not subject to admission or denial. To the extent a response is required, Monsanto states that the allegations in paragraph 47, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems".

48. *Among other things, the transaction would:*

(a) *eliminate significant present and future head-to-head competition between Deere and Precision Planting in the market for high-speed precision planting systems;*

(b) *bring control of high-speed precision planting systems under one firm;*

(c) *likely cause prices of high-speed precision planting systems to be higher than they would be otherwise;*

(d)    *likely cause the quality of high-speed precision planting systems to decrease; and*

(e)    *likely result in the elimination of innovation rivalry by the two leading innovators in the high-speed precision planting systems market.*

**Response:**    Monsanto states that the allegations in paragraph 48 of the Complaint, including the term "high-speed precision planting systems" are vague and ambiguous, and on that basis denies these allegations, and Monsanto specifically denies that there is any meaningful economic market consisting of "high-speed precision planting systems". Monsanto denies the remaining allegations in this paragraph.

## VII.  REQUEST FOR RELIEF

49.    *The United States requests:*

(a)    *that Deere's proposed acquisition of Precision Planting be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;*

(b)    *that the Defendants be permanently enjoined and restrained from carrying out the planned acquisition of Precision Planting by Deere or any other transaction that would combine the two companies;*

(c)    *that the United States be awarded costs of this action; and*

(d)    *that the United States be awarded such other relief as the Court may deem just and proper.*

**Response:**     Monsanto states that Plaintiff is not entitled to the relief requested in Paragraph 49 of the Complaint, and requests that Monsanto be awarded the costs incurred in defending this action and such other relief as the Court may deem just and proper.

### VIII.  <u>AFFIRMATIVE DEFENSES</u>

Monsanto asserts the following affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest with Plaintiff.  Monsanto reserves the right to assert and rely upon any other defenses that may become available or known to Monsanto throughout the course of this action, and to amend, or seek to amend, its answer and affirmative defenses.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Complaint fails adequately to allege any relevant antitrust product market or geographic market.

### THIRD DEFENSE

The proposed acquisition, taken together with Deere's commitments to CNH and AGCO and its license grants, technology transfers, and other commitments to Ag Leader that will become effective immediately upon Deere's completion of the acquisition, is procompetitive.  It will increase consumer choice, result in substantial merger-specific efficiencies and other procompetitive effects, and will directly benefit growers.  These benefits greatly outweigh any alleged anticompetitive effects.

**FOURTH DEFENSE**

The potential for market entry or expansion will prevent the exercise of market power

and avoid any anticompetitive effects.

**FIFTH DEFENSE**

Granting the relief sought is contrary to the public interest because it would, among other

things, harm consumers.

Dated: October 12, 2016                    Respectfully submitted,

                                           /s/ Paul H. Friedman
                                           _____

                                           Paul H. Friedman (admitted *pro hac vice*)
                                           Brian Rafkin (admitted *pro hac vice*)
                                           DECHERT LLP
                                           1900 K Street, NW
                                           Washington, D.C. 20006
                                           202.261.3300
                                           Paul.Friedman@dechert.com

                                           Michael L. Weiner (admitted *pro hac vice*)
                                           Jill A. Ross (admitted *pro hac vice*)
                                           Morgan J. Feder (admitted *pro hac vice*)
                                           Samuel W. Stelk (admitted *pro hac vice*)
                                           DECHERT LLP
                                           1095 Avenue of the Americas
                                           New York, NY 10036
                                           212.698.3500
                                           Michael.Weiner@dechert.com

                                           Barbara H. Wootton (admitted *pro hac vice*)
                                           Wrede Smith (admitted *pro hac vice*)
                                           Francesca Pisano (admitted *pro hac vice*)
                                           ARNOLD & PORTER LLP
                                           601 Massachusetts Avenue, NW
                                           Washington, D.C. 20001

202.942.5000
Barbara.Wootton@aporter.com

George C. Lombardi (6187715)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
312.558-6445
glombard@winston.com

*Counsel for Defendants MONSANTO
COMPANY and PRECISION PLANTING LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 12, 2016, pursuant to Paragraph 12 of the Scheduling and Case Management Order entered on September 27, 2016, I served the foregoing on the below individuals via email.

<em>/s/ Wrede H. Smith III</em>

For Plaintiff United States of America:

    William H. Jones (bill.jones2@usdoj.gov)
    Lisa A. Scanlon (lisa.scanlon@usdoj.gov)
    Kelsey W. Shannon (kelsey.shannon@usdoj.gov)
    Adam C. Speegle (adam.speegle@usdoj.gov)
    U.S. Department of Justice
    Antitrust Division, Litigation III Section

For Defendant Deere & Company:

    David L. Meyer (dmeyer@mofo.com)
    Roxann E. Henry (rhenry@mofo.com)
    David A. Cross (dcross@mofo.com)
    Jonathan S. Gowdy (jgowdy@mofo.com)
    Jessie K. Liu (jessieliu@mofo.com)
    Ronald S. Safer (rsafer@rshc-law.com)
    Patricia Brown Holmes (pholmes@rshc-law.com)
    Matthew J. Fischer (mfischer@rshc-law.com)
    Valarie Hays (vhays@rshc-law.com)
    Deborah Bone (dbone@rshc-law.com)